Kenneth D. GARLAND, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 47A01–0602–CR–65.

Court of Appeals of Indiana.

Oct. 24, 2006.

Lorraine L. Rodts, Special Assistant to the Public Defender, Bloomington, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kenneth Garland was convicted of two counts of Child Molesting, one as a Class A felony and one as a Class C felony, following a jury trial. On direct appeal, we affirmed his convictions but remanded for resentencing. *See Garland v. State*, No. 47A04–0407–CR–388, 835 N.E.2d 231 (Ind.Ct.App. Sept. 26, 2005) (*"Garland I"*). On resentencing, the trial court imposed the same sentence. Garland now appeals the new sentence and raises two issues for our review:

1. Whether the trial court abused its discretion when it used the victim's "tender age" to describe an aggravator.

2. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The facts and procedural history as stated in our prior decision are as follows:

[O]n October 12, 2003, Garland was living with his sister, Teresa Caswell ("Caswell"), Caswell's husband, and the Caswells' two children, seven-year-old daughter, C.C., and six-year-old son, M.C. Garland had a bedroom on the

second floor of the Caswells' home. Caswell departed the house that morning and left Garland to baby-sit her children. Although Caswell's husband was also there, he was sick in bed in the couple's downstairs bedroom. Caswell returned home unexpectedly early that afternoon, went upstairs, and entered Garland's bedroom. She found M.C. lying on the bed and Garland sitting on a chair with a blanket covering him below the waist. When Garland realized Caswell had entered the room, he jumped. At the same time, C.C. "jumped up" out from under the blanket on Garland's lap. Caswell demanded to know "what the hell was going on." Garland claimed nothing was going on. Caswell asked C.C. the same question. C.C. looked back and forth between Garland and Caswell and said nothing. Garland asked Caswell why she was "acting all crazy" and she responded, "Well, I don't know maybe because I come home and my daughter's head is in your lap." Caswell asked Garland to stand up and he complied. When he did, "a little corner of the blanket fell down and Caswell could see bare hip." Garland refused Caswell's request to move the blanket.

Caswell took the children downstairs and left M.C. with his father in his father's bedroom. Caswell and C.C. went to C.C.'s room and shut the door. After she shut the door, Caswell heard Garland run down the stairs and leave through the back door, which slammed shut. Garland never returned to the house. Caswell again asked C.C. what happened, and at first C.C. claimed nothing had happened. After Caswell assured C.C. that she would not be in trouble if she told the truth, C.C. informed Caswell that Garland was "making C.C. put her mouth on his front privates." C.C. also told her mother that earlier that day, Garland "tried to put his front private in her butt."

On October 22, 2003, the State charged Garland with child molesting as a class A felony. Garland was arrested on November 3, 2003. On that day, Garland gave a voluntary statement in which he admitted that on the day in question, C.C. had placed her mouth on his penis (although he claimed she did this without coercion or prompting), and that earlier the same day he had pulled down C.C.'s panties and rubbed his penis against her. Also, he admitted similar molestations on at least two previous occasions. On April 1, 2004, the State added an additional charge of child molesting as a class C felony, relating to the incident that occurred earlier on October 12.

Garland was found guilty on both counts following a jury trial. The trial court imposed the maximum sentence for each conviction, i.e., fifty years for the class A felony and eight years for the class C felony, and ordered that they be served concurrently, with [six] years suspended.

* * *

[T]he trial court cited the following aggravating circumstances [in enhancing Garland's sentence]: (1) A relatively minor criminal history, which included a history of juvenile delinquent activity, (2) Garland was in need of correctional and rehabilitative services that can best be provided by commitment to a penal facility, (3) the victim was seven years old at the time of the incidents, (4) Garland occupied a position of trust with the victim as an uncle and babysitter, and (5) the court explained: "But I believe there's also a criminal history relating to the multiple abuse admitted by the defendant. He was only charged with the one incident in October, but he confess-

ed that he sexually abused his niece twice before that."

*Id.* at 2–4, 8 (citations and footnote omitted).

In *Garland I,* we held that the evidence did not support the trial court's finding that Garland needed corrective and rehabilitative treatment beyond the presumptive term. *Id.* at 9–11. We further held that the trial court violated Garland's *Blakely* rights when it enhanced his sentence based upon his two previous molestations of C.C. *Id.* at 12–13. *See Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). However, we held that the trial court's use of the defendant's age did not involve improper fact-finding. Specifically, we stated:

> The charging information relative to this count alleged:
>
>> On or about October 12, 2003, in Lawrence County, State of Indiana, Kenneth D. Garland, being twenty-one years (21) of age or older, to wit: twenty-five (25); did submit to deviate sexual conduct with [C.C.], to wit: had [C.C.] place her mouth on his penis, said child being under the age of fourteen (14), to wit: seven (7).
>
> In finding Garland guilty of that offense, the jury returned the following verdict: "WE THE JURY, FIND THE DEFENDANT, KENNETH GARLAND, GUILTY OF CHILD MOLESTING, A CLASS 'A' FELONY, AS ALLEGED IN COUNT I." Reading the charging information and the verdict form together, *it is apparent that the jury did indeed find that C.C. was seven years old.* ... Moreover, even if we were to find that the trial court here engaged in improper judicial fact-finding, any error therein would be harmless[ ] ... [since] C.C.'s age was not in dispute."

*Garland I,* slip op., at 11–12 (emphasis added, capitalization in original; citations

omitted). We concluded *Garland I* by noting that:

> the record supports four of the aggravating factors found by the trial court, and a single aggravating factor is sufficient to support a sentence enhancement. Nevertheless, [with these four factors] we cannot say with confidence that the trial court would have imposed the same sentence, absent the impermissible aggravator [of the prior molestations]. "[I]t is apparent to us that the impermissible factor ... played an important role in the trial court's decision to enhance" Garland's sentence. *McGinity v. State,* 824 N.E.2d 784, 789 (Ind.Ct.App. 2005). Put another way, the enhancement imposed here cannot stand without jury findings on the alleged prior molestations.

*Id.* at 13.

On remand for resentencing, the State chose not to proceed with a jury, and the trial court sentenced Garland to the same sentence it previously had ordered. In its Amended Sentencing Order, the trial court listed the following aggravators: "1) Defendant has a prior criminal and juvenile history, 2) Defendant was in a position of trust, specifically as an uncle and babysitter, 3) Victim was a child under the age of twelve, to-wit: age seven." Appellant's App. at 29. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: "Tender Age"

 Sentencing decisions are generally within the discretion of the trial court and will only be reversed upon a showing of an abuse of discretion. *Marshall v. State,* 832 N.E.2d 615, 623 (Ind.Ct.App. 2005), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or if the

trial court has misinterpreted the law. *Id.* The court may increase a sentence or impose consecutive sentences if the court finds aggravating factors. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind.2001); Ind. Code § 35–38–1–7.1(b).

 Indiana law requires that the trial court take the following steps during sentencing: (1) identify all significant mitigating and aggravating circumstances; (2) specify facts and reasons which lead the court to find the existence of each such circumstance; and (3) demonstrate that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Id.* A single aggravating circumstance is enough to justify an enhancement or the imposition of consecutive sentences. *McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001). Even when the trial court improperly applies an aggravator but other valid aggravating circumstances exist, a sentence enhancement may still be upheld. *Smith v. State,* 770 N.E.2d 818, 822 (Ind.2002). We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained its reasons for the sentence. *Vazquez v. State,* 839 N.E.2d 1229, 1232 (Ind.Ct.App.2005), *trans. denied.*

 In its Amended Sentencing Order, the trial court repeated the aggravating factor of the victim's age from the original sentencing order.. The trial court at the

resentencing hearing also orally declared the language in the Amended Sentencing Order. At that hearing, the trial court stated:

> The Court finds the following aggravating circumstances: 1) There is a prior criminal and juvenile history; 2) The defendant was in a position of trust.... And number 3) The victim was a child under the age of 12, to-wit: age 7. And I'm not finding any other aggravating circumstances.... I also find and state for the record that I believe the aggravating circumstance of tender age is sufficient to aggravate.... I further believe that the tender age and the position of trust are more than sufficient to aggravate and ... all three are sufficient to aggravate. I do believe that trust is sufficient on its own [and] that tender age is sufficient on its own, but all three taken together, I'm very confident ... that those are sufficient to aggravate this sentence.

Resentencing Transcript at 8–9.[1]

 Garland now argues that the jury was not asked to find that, at age seven, C.C. was "of tender age." Specifically, Garland maintains that "[the] particularized finding of fact [of tender age] is the functional equivalent of an element of the aggravated crime[,] which must be found by a jury beyond a reasonable doubt." Appellant's Brief at 5. As such, Garland argues, the use of "tender age" as an aggravator either violated *Blakely*[2] for not

---

1. The pages of the transcript for the resentencing hearing are not numbered. Our reference treats page one as the first bound page.

2. In its brief, the State argues that Garland waived his right to appeal the *Blakely* issue by not objecting at the resentencing hearing. In support, the State cites four recent decisions from the this court. However, as Garland correctly notes, the State misses the more

recent decisions from our supreme court in *Mitchell v. State,* 844 N.E.2d 88, 91 (Ind. 2006), *Kincaid v. State,* 837 N.E.2d 1008, 1010 (Ind.2005), and *Smylie v. State,* 823 N.E.2d 679, 689–90 (Ind.2005), in which the court held that "the defendant need only raise a particular sentencing claim in his or her initial brief on direct appeal in order to receive review on the merits." *Mitchell,* 844 N.E.2d at 91. Garland has not waived the *Blakely* issue.

having been submitted to a jury or it violated Indiana law by using a fact found by the jury as both an element of the crime and an aggravating factor. *See Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988). We disagree.

In *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." In *Blakely,* the Court clarified that "the 'statutory maximum' for *Apprendi* purposes .is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. In *Trusley v. State,* 829 N.E.2d 923, 925 (Ind.2005), our supreme court specified that *"Blakely* is not concerned, primarily, with what facts a judge uses to enhance a sentence, but with how those facts are found."

■ In *Trusley,* our supreme court held that "a defendant's Sixth Amendment rights are not implicated when the language of an aggravator is meant to describe the factual circumstances, not to serve as a fact itself." 829 N.E.2d at 926 (quoting *Morgan v. State,* 829 N.E.2d 12, 17 (Ind.2005)).[3] Such observations "merely describe the moral or penal weight of underlying facts" and "do not involve impermissible judicial fact-finding, but rather reflect the efforts of a judge to describe in a concise manner what the underlying facts mean, and why they demonstrate

that a particular defendant deserves an enhanced sentence." *Id.* However, to qualify as a moral-penal observation, the statement must be: (1) supported by facts found by the jury or otherwise admitted and (2) meant as a concise description of what the underlying facts demonstrate. *Id.* at 926–27. We conclude that the trial court's oral comment that C.C. was of "tender age" was merely a moral-penal observation. Thus, the comment does not violate *Blakely.*

■ In *Garland I,* we held that the jury found the fact of C.C.'s age. Specifically, we stated "it is apparent that the jury did indeed find that C.C. was seven years old." *Garland I,* slip op. at 11. As such, the trial court's use of this fact in sentencing did not violate *Blakely. See Trusley,* 829 N.E.2d at 925–26. During resentencing, the trial court referenced no facts regarding "tender age" other than C.C.'s chronological age. Hence, the trial court based its oral comments regarding C.C.'s "tender age" exclusively on a fact found by the jury. Thus, the statement that C.C. was of "tender age" is supported by the jury's findings and the first requirement of moral-penal observations is satisfied. To the extent that Garland now asks that we revisit the holding in *Garland I* that the jury found the fact that C.C. was seven years old, we are bound by the law of the case doctrine to decline. *See State v. Huffman,* 643 N.E.2d 899, 901 (Ind.1994).

■ Garland further contends that such use of C.C.'s age is the functional equivalent of using a fact found by the jury

---

**3.** In his Reply Brief, Garland argues that *Trusley* is not analogous, as it was based on "superfluous judicial fact-finding derived from the defendant's criminal history, an aggravating circumstance long recognized under state law." Reply Brief at 5. Garland plainly misreads *Trusley,* in which the defendant was convicted of neglect of a dependent

and sentenced based on multiple aggravators, including the victim's age and the defendant's position of trust over the victim. *Trusley,* 829 N.E.2d at 924–25. Further, the latter aggravator provided the context for our supreme court's discussion regarding moral-penal observations. *Id.* at 926–27.

as both an element of the crime and an aggravating factor, contrary to Indiana law. *See Stewart,* 531 N.E.2d at 1150. However, even assuming that C.C.'s precise age or "tender age" was an element of the crime, Garland misses our supreme court's decision in *Tidmore v. State,* 637 N.E.2d 1290, 1291–92 (Ind.1994). In *Tidmore,* our supreme court held that elements of an offense may be used as an aggravating factor in some circumstances. *Id.* at 1292 (citing *Townsend v. State,* 498 N.E.2d 1198 (Ind.1986)). Specifically, a court may consider an element of an offense, for example, the possession of a deadly weapon, as an aggravating factor if the court specifies why use of the weapon or threats with it constituted an aggravator. *Id.* Specifying why a fact constitutes an aggravator is at least analogous to the second requirement of moral-penal observations, where the language is not intended to serve as a separate fact but "to describe in a concise manner what the underlying facts mean, and why they demonstrate that [the] defendant deserves an enhanced sentence." *Trusley,* 829 N.E.2d at 926.

Here, the trial court's use of the phrase "tender age" was merely a clarification of why the fact of C.C.'s chronological age was a meaningful aggravator. That understanding of "tender age" is supported by three facts. First, after the trial court listed the three aggravating factors, but before it introduced the phrase "tender age," the trial court stated: "And I'm not finding any other aggravating circumstances." Resentencing Transcript at 8. Second, the trial court's written Amended Sentencing Order did not refer to "tender age." These two facts indicate that the trial court did not consider "tender age" to be an aggravator in itself, but merely a concise description of the aggravator of age. Third, the overall context of the trial court's language indicates that the trial court did not view "tender age" as a separate aggravator. That is, no facts or reasons were given by the trial court to support a conclusion that "tender age" was a separate aggravator; rather, the trial court's overall use of "tender age" indicates that it was a descriptive term to clarify why the trial court found C.C.'s age to be an aggravator. *See Haas v. State,* 849 N.E.2d 550, 553 (Ind.2006). As Garland suggests, in finding that C.C. was of "tender age" the trial court indicated that it found C.C. to be "particularly young or vulnerable," and, presumably, susceptible to abuse. Appellant's Brief at 9. As such, we find that the trial court, in using the phrase "tender age," intended to provide a concise description of what the underlying facts demonstrated, satisfying the second requirement of moral-penal observations.

Nonetheless, Garland contends that "an assessment of moral or penal weight is … a semantic shell game nixed by the *Apprendi* line of cases. . . . Plainly, the moral or penal effect of [C.C.'s] age … is such a fact [that requires authorization by the jury's verdict]." Appellant's Brief at 10–11. We both agree and disagree with this argument. Insofar as Garland asserts that moral-penal observations must be supported by facts found by the jury, we agree. That is the basis for the first requirement of moral-penal observations as announced in *Trusley.* As described above, that requirement has been satisfied. However, we cannot agree with Garland insofar as he contends that the jury must find moral-penal observations separately. Moral-penal observations serve only to clarify or describe the record; they are not facts in themselves. *See Trusley,* 829 N.E.2d at 926–27. As our supreme court explained, so long as the two requirements of moral-penal observations have been satisfied, those statements are within the powers reserved to the trial court judge. *Id.* at 927. As such, those observations do not violate the Sixth Amendment.

To the extent Garland asserts that any consideration of a victim's age as an aggravator in a child molesting case violates *Blakely,* such an argument is not supported either in our case law or by *Blakely.* Again, in *Trusley,* our supreme court specified that *"Blakely* is not concerned, primarily, with what facts a judge uses to enhance a sentence, but with how those facts are found." Id. at 925. As we noted above, the jury found the fact of C.C.'s age. Hence, *Blakely* is satisfied. Further, in *Stewart* our supreme court held that the trial court properly utilized the age of the victim in a child molesting case as an aggravating circumstance when the trial court considered that the victim was of "tender age." *Stewart,* 531 N.E.2d at 1150. Likewise, in *Buchanan v. State,* 767 N.E.2d 967, 971 (Ind.2002), our supreme court held that it was proper for a trial court to rely upon the age of a victim of child molesting when the trial court noted that the victim was of tender years. And in *Kien v. State,* 782 N.E.2d 398, 414 (Ind. Ct.App.2003), *trans. denied,* we affirmed the trial court's use of "tender years" as an aggravating factor. This list is nonexhaustive. To the extent that Garland asks us to overrule those precedents, we decline to do so.

### Issue Two: Appropriateness of Sentence

◼ Garland contends that his sentence is inappropriate in light of the nature of the offenses and his character. We exercise with great restraint our responsibility to review and revise sentences, recognizing the special expertise of the trial bench in making sentencing decisions. *Bennett v. State,* 787 N.E.2d 938, 949 (Ind. Ct.App.2003), *trans. denied.* If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001).

The advisory sentences for a Class A felony and a Class C felony are, respectively, thirty years and four years. Ind. Code §§ 35–50–2–4, 35–50–2–6(a). Here, again, the trial court identified three aggravators, namely: (1) Garland's prior criminal and juvenile history; (2) Garland's position of trust over C.C.; and (3) C.C.'s age. The trial court found no mitigators.[4] The trial court then imposed the maximum sentence for each conviction, i.e., fifty years for the Class A felony and eight years for the Class C felony, and ordered that they be served concurrently, with six years suspended.

Garland argues that, because he is not the worst offender and his offense is not the worst offense, the maximum sentence does not apply to him. We addressed such

---

4. In his initial brief, Garland suggests that the following mitigators should have been found by the trial court: "neither of [his] crimes involved physical injury or brutality, he does not have a violent criminal history," his age (twenty-five) at the time of the molestation, the fact that he was C.C.'s uncle and not her father or step-father, the brevity of time in which Garland lived with the Caswells, and the consequently presumed relatively low psychological and emotional harm occasioned to C.C. Appellant's Brief at 19–20. However, at the resentencing hearing, Garland only raised his age and alleged mental health problems as proposed mitigators. Garland does not challenge the mental health issue. As for his age, a trial court is not required to find mitigators or to explain why it has chosen not to do so. *See Blanche v. State,* 690 N.E.2d 709, 715 (Ind.1998). Regarding the newly proposed mitigators, "[a] defendant who fails to raise proposed mitigators at the trial court level is precluded from advancing them for the first time on appeal." *Samaniego–Hernandez v. State,* 839 N.E.2d 798, 805 (Ind.Ct.App.2005).

arguments generally in *Brown v. State*, 760 N.E.2d 243, 247 (Ind.Ct.App.2002):

> There is a danger in applying this principle . . . . If we were to take this language literally, we would reserve the maximum punishment for only the single most heinous offense. . . . This leads us to conclude the following with respect to deciding whether a case is among the very worst offenses and a defendant among the very worst offenders, thus justifying the maximum sentence: We should concentrate less on comparing the facts of this case to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.

We initially focus on the first aggravator, that of Garland's prior offenses. In *Garland I*, we referred to Garland's criminal history as "relatively minor." *Garland I*, slip op. at 13. The trial court likewise seems to have attributed a minor weight to the aggravator of criminal history. At the resentencing hearing, the trial court stated that Garland's position of trust and C.C.'s age each independently justified the aggravated sentence. However, the trial court reached no such conclusion regarding Garland's criminal history. As such, we find that the trial court properly assigned the aggravator of criminal history a relatively low weight.

As for the aggravators of abuse of trust and C.C.'s age, we cannot say that the trial court improperly weighed those aggravators. The nature of the child molesting offenses against C.C. indicates a significant abuse of trust. Garland is C.C.'s uncle and was her babysitter. Garland's family provided him with a place to live in their home and entrusted him to watch over C.C. and to protect her from harm. Once entrusted to watch over C.C., Garland used his position as uncle, resident, and babysitter to molest C.C. Specifically, Garland used his position to have C.C. engage in oral sex on him, to attempt to sodomize C.C., and to engage in sexual conduct with C.C. by "pull[ing] down C.C.'s panties and rubb[ing] his penis against her." *Id.* at 3–4. The molestation also occurred in the presence of C.C.'s six-year-old brother. Further, the trial court, in finding that C.C. was of "tender age," indicated that it found C.C. to be "particularly young or vulnerable," and, presumably, susceptible to such abuses. Appellant's Brief at 9. Such conduct towards those closest to Garland reflects a general disregard for the safety and welfare of others.

The trial court, at the resentencing hearing, appears to have given equal weight to the aggravator of abuse of trust and the aggravator of age, as the trial court stated that each alone was sufficient for the enhanced sentence. However, since we affirm the trial court's use of C.C.'s age as an aggravator, and since Garland does not challenge either of the other aggravators, we need not assess whether any one factor merited an additional twenty years' imprisonment. We conclude that the trial court properly assessed significant aggravating weight to the aggravators of abuse of trust and C.C.'s age. We cannot say that Garland's fifty-year sentence is inappropriate in light of the nature of the offenses and his character.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.